Zimmerman, J.
 

 Under Section 544, General Code, the sole function of this court is to determine whether, under all the facts and circumstances developed in the hearings before the commission, the final order entered by the commission is unlawful or unreasonable.
 

 Although we have considered the 65 separate assignments of error listed by the city in its main brief, we shall confine our discussion to those matters which are of real significance and to which the city attaches prime importance.
 

 First, the city contends that the commission wrongfully allowed as a legitimate operating expense “excess profits taxes ’ ’ paid by the company to the federal government. Such allowance was not contested by the city before the commission; on the contrary in one of the exhibits introduced by the city, such taxes were conceded, inferentially at least, to be a proper item for inclusion among operating expenses. Because of its attitude with respect to this item before the commission, the city is hardly in a position now to register any persuasive objection.
 

 Moreover, the general rule is that validly imposed taxes of all kinds may be properly included in the operating expenses of a public utility for rate-making purposes. 43 American Jurisprudence, 667, Section 143.
 

 It was the duty of the commission in the instant case to accord the company a fair and reasonable return based on the undepreciated book cost of its properties. In arriving at such figure all legitimate taxes paid by the company out of its revenues were entitled to consideration in a determination of the percentage of return it should receive on its stipulated investment.
 

 The city complains next there was insufficient evi
 
 *60
 
 dence to establish rate-case expense and that the commission was too generous in the allowance made therefor.
 

 In Ohio as in many other jurisdictions it is recognized that where a utility appeals to the public utilities commission of a state, complaining that the rates established by a city ordinance are unfair and unjust, and the utility is successful in its appeal, proper expenses incurred by the utility in the preparation and presentation of its side of the controversy may be included by the commission among operating expenses in computing a fair return to the company.
 
 East Ohio Gas Co. v. Public Utilities Commission,
 
 133 Ohio St., 212, 239, 12 N. E. (2d), 765, 778;
 
 City of Cincinnati
 
 v.
 
 Public Utilities Commission,
 
 151 Ohio St., 353, 375, 86 N. E. (2d), 10, 22; 43 American Jurisprudence, 672, Section 152.
 

 Upon a consideration of the arguments of counsel with respect to this issue as contained in their briefs and as presented upon oral argument, together with an examination of the record, we are satisfied that the commission’s determination as to the sum allowable for rate-case expense cannot be denoted as unreasonable.
 

 The question of rate-case expense has been before the commission on many occasions and in a variety of circumstances through the years and the experience so gained could properly be utilized by the commission in gauging this matter. The computation as made is not out of line with amounts fixed and approved in other comparable cases.
 

 In a situation where a part of rate-case expense must be estimated and the computation as made does not transcend reasonable bounds, one way or the other, a reviewing court will not ordinarily disturb the amount actually arrived at.
 
 Wabash Valley Electric Co.
 
 v.
 
 Young,
 
 287 U. S., 488, 77 L. Ed., 447, 53 S. Ct., 234.
 

 Assuming that the commission did err on the side
 
 *61
 
 of liberality in its allowance for rate-case expense, the allowance actually made amounts to about only one-tenth. of one per cent and its impact on the rates finally fixed is so trivial that there would be little justification for returning the case to the commission for a reconsideration and redetermination of this element.
 

 Another contention of the city is that the annual allowance for depreciation as determined by the commission was too great and was based upon insufficient evidence.
 

 Generally speaking, depreciation for which allowance should be made in fixing the rate base for a public utility is the loss, not restored by current maintenance, which is due to all the factors causing the ultimate retirement of the property, and embraces wear and tear, decay, inadequacy and obsolescence.
 
 Lindheimer
 
 v.
 
 Illinois Bell Telephone Co.,
 
 292 U. S., 151, 78 L. Ed., 1182, 54 S. Ct., 658.
 

 An approved method for determining the annual allowance for depreciation is to establish an average rate computed over the entire estimated service life of the property concerned; and this was the course followed by the commission.
 

 An examination of the record discloses that considerable evidence of a conflicting nature was submitted to the commission on this subject. Based upon certain test periods covering a given number of years, the witnesses for the city maintained that such allowance should be a flat sum of $1,000,000 per year, equal-ling about one per cent as applied to the undepreciated book cost of the company’s properties.
 

 The company claimed a higher percentage and presented as its chief witness one of its officers whose testimony was based largely upon an extensive survey and report prepared by a reputable engineering firm and with which survey the witness was thoroughly familiar.
 

 When the city raised the objection that this evi
 
 *62
 
 dence was hearsay, an offer was made to produce for cross-examination the compiler of the report, but the city did not avail itself of the opportunity.
 

 The tables of calculations made by the firm of engineers referred to were introduced in evidence as an exhibit.
 

 In a contest before the commission pertaining to rates which may be charged by a utility for its products or services, the duty devolves upon the commission to consider all the evidence and to select and apply that which in its opinion is best calculated to contribute to a fair and just outcome.
 

 It has long been the rule that this court will not substitute its judgment for that of the commission, where-the findings of the commission are supported by substantial evidence.
 

 In our opinion, there was evidence of a reliable and substantial character to sustain the findings of the commission as to the annual allowance for depreciation and we discover no good cause for reversing its. order in this respect.
 

 ■ One of the errors argued less strenuously by the city is that the commission went astray on the amount of the company’s property allocated to the city. Suffice it to remark that the commission was confronted with two methods for determining such allocation and we cannot declare, upon the record, that the one chosen was improper or unwarranted.
 

 Relying upon language found in the opinion in the case of
 
 City of Cincinnati
 
 v.
 
 Public Utilities Commission, supra,
 
 the city insists that the commission’s findings as to the company’s revenues were erroneous because of the absence of a bill analysis or customer classification.
 

 In our view of the matter, such information would have been proper as an aid in estimating future revenues, but it was not essential to an effective deter
 
 *63
 
 mination of the question. The commission had before it a breakdown of the various classifications showing anticipated revenues; it also had before it tables showing the rates proposed. Other evidence was likewise before the commission, relating to the subject and from which an intelligent analysis and appraisal could be made. That the commission weighed the material available to it and came to an independent conclusion is indicated by the fact that the final rates fixed by it were less than those proposed by the company.
 

 It stands to reason that rates for electric current which would be adequate in the early 1940’s would not be so at a later time in the same decade. As a matter •of common knowledge wages and salaries generally increased very materially during these years as did the costs of materials, supplies and commodities of all kinds. And although the use of electric current became greater through these years, so did the cost of producing a.nd distributing that current.
 

 All these factors were correctly taken into account by the commission, upon the evidence adduced, in establishing a fair and just rate for the four-year period involved.
 

 Finally, the city urges that the rate of return as fixed by the commission is excessive.
 

 It is axiomatic that a public utility is entitled to a fair return on the value of its property devoted to the business of supplying its products or services to the consumers or users thereof.
 

 Based upon the proposition that public utilities should be entitled to a rate of return approximating the legal rate of interest, or the investment and interest rates generally prevailing in the locality, a rate of six per cent has often been approved.
 

 In the present case the commission established a rate of return a trifle below six per cent. We cannot say that such rate is unreasonable. See
 
 City of Ports
 
 
 *64
 

 mouth
 
 v.
 
 Public Utilities Comm.,
 
 108 Ohio St., 272, 276, 140 N. E., 604, 605.
 

 This court is frank to confess that it has not performed the arduous task of reading and examining the entire record, which consists of many pages of testimony and hundreds of exhibits. However, we have examined those parts pertaining directly to the complaints registered by the city and from such examination it is our studied opinion that the commission performed its work in a competent and painstaking manner and reached a substantially correct result, giving due heed to the rights and interests of all those affected.
 

 We cannot conscientiously hold that the final order of the commission is unlawful or unreasonable and it therefore follows that such order is affirmed.
 

 Order affirmed.
 

 Weygandt, C. J., Matthias, Hart, Turner and Taft, JJ., concur.
 

 Stewart, J., not participating.