222

OHIO BUS LINE, INC., APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO, APPELLEE.
GREYHOUND LINES, INC., APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO, APPELLEE.

(Nos. 71-2 and 71-8—Decided March 22, 1972.)

*Messrs. Gould & Reichert* and *Mr. Stephen D. Strauss,* for appellant in case No. 71-2.

*Mr. Barrett Elkins, Messrs, Porter, Stanley, Treffinger & Platt* and *Mr. Langdon D. Bell,* for appellant in case No. 71-8.

*Mr. William J. Brown,* attorney general, and *Mrs. Sally W. Bloomfield,* for appellee.

STEPHENSON, J. R. C. 4903.13, the statutory authorization for appeals to this court from final orders of the Public Utilities Commission, provides that such orders "* * *

shall be reversed, vacated, or modified by the Supreme Court on appeal, if, upon consideration of the record, such court is of the opinion the order was unlawful or unreasonable.'' Appellants have advanced various contentions as to why the order appealed from is both unlawful and unreasonable.

The principal complaint advanced by appellants is that the commission lacked jurisdiction to enter the order. That contention is premised upon a claimed failure to comply with the publication provisions of R. C. 4921.09. The statute provides, in pertinent part:

''The applicant for a certificate, or for an amendment of the route authorized by such a certificate, when intrastate operations are proposed, shall give notice of the filing of such application by publication * * *. Such published notice for a regular route shall state the fact that such application has been made, the route proposed to be operated, the number of motor vehicles to be used, the number of trips to be made daily for the transportation of persons, whether daily or other service for the transportation of property is to be furnished, and the name and address of the applicant. * * *''

The principal deficiency asserted is that, since the publication must state ''the route proposed to be operated,'' inasmuch as the publication made by applicant set forth the initial defective routing described in the application, and not the amended routing granted by the commission, the publication was defective and jurisdiction was not acquired.

The Public Utilities Commission is a creation of the General Assembly under the police power of the state, and it has only such jurisdiction and authority to act as is vested in it by statute. *Cincinnati* v. *Pub. Util. Comm.* (1917), 96 Ohio St. 270; *Valley Greyhound Lines* v. *Pub. Util. Comm,* (1947), 148 Ohio St. 603; *B. & O. Rd. Co.* v. *Pub. Util. Comm.* (1968), 16 Ohio St. 2d 60.

Where, with respect to the issuance of certificates of public convenience and necessity, the General Assembly has

imposed restrictions and limitations, such are mandatory and jurisdictional in nature. See *Columbus-Suburban Coach Lines* v. *Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125. In *Mohawk Motor* v. *Pub. Util. Comm.* (1967), 11 Ohio St. 2d 244, this court again emphasized the mandatory character of the requirements of R. C. 4921.09.

However, in examining the legislative grant of authority by the General Assembly with respect to the issuance of certificates, particularly that set forth in R. C. 4921.09, it must be recognized that the General Assembly obviously did not intend that every defect in an application or publication, irrespective of its import, dimension and effect, would bar the assumption of jurisdiction by the commission. R. C. 4921.09 provides, in part:

"* * * The commission may permit the correction, amendment, modification, or alteration of any such application at or before the hearing on it when, in its opinion, the application and notice are in substantial compliance with the law. Otherwise, it shall direct the filing of a new application or the giving of a new notice, or both."

Where the defect is of such a character that there is a total failure to comply with the requirements of the statute, in whole or in part, as a matter of law there can be no "substantial compliance," and the defect will be deemed fatal. *Erie Rd. Co.* v. *Pub. Util. Comm.* (1927), 116 Ohio St. 710 (failure to attach map required by statute); *Lake Shore Elec. Ry.* v. *Pub. Util. Comm.* (1926), 115 Ohio St. 311 (failure to publish notice in accordance with the then statutory requirement of publication in each county where applicant proposed to operate). However, when the defect is not of the character described above, and the commission is of the opinion that the application and notice are in substantial compliance with law, and the record supports such determination, jurisdiction attaches. *Valley Greyhound Lines* v. *Pub. Util. Comm., supra* (148 Ohio St. 603). See, also, *Wheeling Traction Co.* v. *Pub. Util. Comm.* (1931), 124 Ohio St. 393.

The record in this case discloses that the proposed

route traverses substantially the whole of the state from the southwest to the northeast, and is over 200 miles in distance. The defect in route description and publication here in question is that the connection from Route 82 to Interstate 271 is not north of Route 82 as described but is, in fact, a short distance, less than a mile, south of Route 82.

In passing upon and rejecting a requirement of a publication of the amended route, the commission stated in its order:

"In this case, the application and its publication clearly stated the points to be served by the proposed bus operation. The erroneous description of route was clearly of a technical nature, and the correct route would be evident to the most ingenuous of laymen. Protestants' appearance and protest in the case show that they were not adversely affected by this technical deficiency, and they have failed to establish any prejudice to the public. (*Buckeye Stages* v. *P. U. C. O.*, 117 Ohio St. 540; accord *Valley Greyhound Lines, Inc.*, v. *P. U. C. O.*, 148 Ohio St. 603; cf. *Liberty Highway Co.* v. *P. U. C. O.*, 128 Ohio St. 586.)"

In light of the circumstances revealed by the record, we concur in such view, and note particularly that it is difficult to perceive any prejudice to either the protestants or the public in light of the fact that the certificate sought was authority to operate nonstop, with no pick up or discharge of passengers, baggage or express en route. There being substantial compliance with law in respect to the application and notice, the commission properly assumed jurisdiction.

It is asserted further that the commission lacked jurisdiction to issue the certificate because the alternate routes were not yet fully constructed. We recognize the over-all legislative intent in R. C. Chapter 4921 is to confine the regulative authority of the commission to a "public highway," as that term is defined in R. C. 4921.02(C).

We are in agreement, however, with the following view adopted by the Supreme Court of Texas in *Railroad Comm.*

v. *Southwestern Greyhound Lines* (1942), 138 Texas 124, 127, 157 S. W. 2d 354:

"The act in question confers on the Railroad Commission authority to grant certificates of public convenience and necessity over the public highways of this state. The act defines a 'public highway' as 'every street, road or highway in this state.' It contemplates an existing highway, and not a mere projected but wholly nonexistent highway. We do not hold that the highway would have to be completed and ready for use by the public before the certificate could be granted. This would be too narrow a view. A more practical construction must be given to the statute. The commission must have authority to grant the certificate far enough in advance of the completion of the road as to enable the recipient thereof to be prepared to meet the needs of the public as soon as the road is ready for use. * * *"

The primary consideration in the granting of certificates of convenience and necessity is the best service to the public. *H. & K. Motor Transp.* v. *Pub. Util. Comm.* (1939), 135 Ohio St. 145. The need and convenience to the traveling public, as well as convenience and economy to carriers, is fostered by allowing operation upon newly built highways upon their completion.

We conclude that where the commission determines that there exists a public necessity and convenience requiring the granting of a certificate for an operable route, and also determines a public necessity and convenience for the granting of an alternate route upon completion of its construction, the commission possesses jurisdiction to grant a certificate embodying such alternate route.

Appellant Greyhound next urges a procedural deficiency in that the order of the commission fails to comply with the requirements of R. C. 4903.09, for the reason that it does not make findings of fact and set forth reasons prompting its decision with respect to the jurisdictional issue, the adequacy of existing service and whether applicant was a proper party to be awarded a certificate,

The opinion and order made six findings of fact and five conclusions of law. The findings are preceded by a three-page opinion setting forth the reasoning with respect to the findings, and are followed by a three-page opinion, denying rehearing and further explaining the reasons for its findings and conclusions. The proper test to be applied is set forth in the fourth paragraph of the syllabus in *Mt. Vernon Telephone Corp.* v. *Pub. Util. Comm.* (1955), 163 Ohio St. 381, which provides:

"An order of the Public Utilities Commission satisfies the requirements of Section 4903.09, Revised Code, concerning the finding of facts and written opinions setting forth the reasons prompting the order, where the order fully covers the evidence, finds the ultimate facts upon which it is based and fully sets forth the reasons therefor."

While we are of the view that greater specificity could and would have been appropriate in the order with respect to the matters of which complaint is made, we are satisfied that the order substantially meets the test above set forth.

Appellants also claim that they were entitled, under the provisions of R. C. 4921.10, to a reasonable time to provide the service applicant proposes under his application. The pertinent portion of that statute reads:

"On a finding of the commission that any motor transportation company does not give convenient and necessary service in accordance with the order of such commission, such * * * company shall be given a reasonable time, not less than sixty days, to provide such service before * * * a new certificate [is] granted over the route or for the territory mentioned in the finding * * *."

It is an underlying statutory prerequisite that for the above-quoted portion of the statute to apply, the motor transportation company presently operating over the route, or in the territory, must have the necessary certification in order to change its operation to meet the public need the commission finds to exist. The record reveals that neither of appellants has individual authority to operate

from Oxford to Cleveland. Ohio Bus Line has authority to operate from Oxford to Dayton. Greyhound has authority to operate from Dayton, to Columbus, to Cleveland, returning over the same route with originating authority in Shaker Heights. The applicant has authority to operate nonstop from Oxford to Columbus, where passengers may then proceed by Greyhound to Cleveland. The appellants, by contract only, provide through service between Oxford and Cleveland, via Dayton. The commission has determined the public need for a more direct and express service than now exists between Oxford and Cleveland. Appellants, under their existing certification, cannot provide it for the reason they lack both the necessary route and nonstop authority.

This court, in *Greyhound Lines* v. *Pub. Util. Comm.* (1967), 9 Ohio St. 2d 187, a case involving the same parties to this appeal, held that if the same route or territory is not involved, the requirement of R. C. 4921.10 as to a 60-day order is inapplicable. Appellants concede the difference in routing but urge that since the same termini are involved it is the same "territory." Reliance is made principally upon *Columbus, Delaware & Marion Electric Co.* v. *Pub. Util. Comm.* (1927), 116 Ohio St. 92. That holding, however, is distinguishable for the reason that, in that case, the applicant proposed to operate over the same route as the existing carriers, and also for the reason that the commission had not determined, as here, the public need for direct and express service.

We are not persuaded that the General Assembly intended by R. C. 4921.10 to allow connecting carriers, by contract, to "tack" together their certifications to constitute a "territory" and require the issuance of a 60-day order, where, individually, they would not be entitled to such order, and where their collective operating authority still differs in routes and type of service from the proposed new service.

The remaining arguments of appellants relate to the granting of a certificate in the absence of public conveni-

ence and necessity, to failure to consider existing services and the adverse effect of a new certificate upon appellants, and the utilization by the commission of outdated financial statements, equipment list and tariff schedules. Those grounds are necessarily based upon the determination of facts and go to the weight of the evidence.

From an examination of the order appealed from in this case, it is apparent that the commission considered and passed upon all the above matters of which complaint is made.

"In cases such as this, it is not the province of this court to examine the evidence for the purpose of deciding if we would arrive at the same conclusion as did the commission, but only to see if evidence existed to support the finding of the commission." *Greyhound Lines* v. *Pub. Util. Comm., supra* (9 Ohio St. 2d 187).

We conclude, from an examination of the record, that the evidence supports the order, and that the order appealed from is not unlawful or unreasonable. Therefore, the order is affirmed.

*Order affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, BRENNEMAN, CORRIGAN and LEACH, JJ., concur.

BRENNEMAN, J., of the Ninth Appellate District, sitting for DUNCAN, J. Judge BRENNEMAN of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" Justice DUNCAN and Judge BRENNEMAN did so and heard and considered this cause prior to the resignation of Justice DUNCAN on November 28, 1971.

STEPHENSON, J., of the Fourth Appellate District, sitting for STERN, J.