THE OHIO MANUFACTURERS' ASSOCIATION, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Ohio Manufacturers' Assn. v. Pub. Util. Comm. (1976), 46 Ohio St. 2d 214.]

(No. 75-971—Decided May 12, 1976.)

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. Sheldon A. Taft,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Charles S. Rawlings* and *Ms. Cheryl K. Hachman,* for appellee Public Utilities Commission.

*Mr. J. R. Newlin, Mr. W. E. Herron* and *Mr. S. F. Koziar,* for appellee Dayton Power & Light Company.

WILLIAM B. BROWN, J. The determinative question presented is whether the Public Utilities Commission may authorize a public utility to levy a monetary penalty against its consumers.

The commission's position is stated in the following portion of an order which denied a rehearing to Dayton Flexible Products Division of Baxter Laboratories in the instant matter:

"* * * While that statute [R. C. 4909.16[1]] does not specifically state that the commission shall have the authority to levy penalties for consumption overruns or to delegate that authority, it seems repugnant to the spirit and purpose of that provision to allow the commission to declare an emergency and yet not be able to take whatever reasonable measures it deems necessary in order to alleviate that emergency. Applicant does not argue that enforcement provisions are not reasonably necessary to make the plan effective. * * * It merely asserts that penalties, per se, are unlawful and unreasonable. * * * It is important to note that the end sought here is the conservation of gas, a reasonable governmental purpose; the commission is of the opinion that penalty imposition will serve that end. Contrary

---

[1]R. C. 4909.16 reads:

"When the Public Utilities Commission deems it necessary to prevent injury to the business or interests of the public or of any public utility of this state in case of any emergency to be judged by the commission, it may temporarily alter, amend, or, with the consent of the public utility concerned, suspend any existing rates, schedules, or order relating to or affecting any public utility or part of any public utility in this state. Rates so made by the commission shall apply to one or more of the public utilities in this state, or to any portion thereof, as is directed by the commission, and shall take effect at such time and remain in force for such length of time as the commission prescribes."

to. what some of the, intervening parties contended, there is no intent to provide some form of civil or criminal punishment similar in nature to that provided by Sections 4905.54-56, 4909.41-99 Revised Code. A plan without adequate enforcement provisions would be meaningless.''

The basic function of the commission is to ''supervise and regulate public utilities and railroads.'' R. C. 4905.04. ''The jurisdiction, supervision, powers, and duties, of the Public Utilities Commission extend to every public utility and railroad * * *.'' R. C. 4905.05. R. C. 4905.54 through 4905.57 impose monetary penalties (''forfeitures'') against ''every public utility or railroad'' which violates a commission edict, and authorize the Attorney General to enforce such penalties.

Although the foregoing regulatory powers are broad, the General Assembly has granted no such power to the commission for the regulation of *consumers*.

Despite the fact that the commission possesses no power or authority except that conferred and vested in it by statute[2] and no statute authorizes the commission to delegate to a public utility the power to penalize a consumer, appellees urge this court to affirm the subject order.

We must reverse the order even though the FPC has allegedly authorized Columbia to penalize Dayton Power if its consumers use more gas than allocated to Dayton Power. Such considerations have little to do with whether the order is unreasonable or unlawful, especially where the system of monetary penalties on the federal level has not been authoritatively endorsed.[3]

[2]*Penn Central Transportation Co.* v. *Pub. Util. Comm.* (1973), 35 Ohio St. 2d 97, paragraph one of the syllabus; *Ohio Bus Line* v. *Pub. Util. Comm.* (1972), 29 Ohio St. 2d 222, paragraph one of the syllabus; *B. & O. Rd. Co.* v. *Pub. Util. Comm.* (1968), 16 Ohio St. 2d 60, paragraph two of the syllabus; *Akron & Barberton Belt Rd. Co.* v. *Pub. Util Comm.* (1956), 165 Ohio St. 316, paragraph one of the syllabus; *New Bremen* v. *Pub. Util. Comm.* (1921), 103 Ohio St. 23, paragraph one of the syllabus; *Cincinnati* v. *Pub. Util. Comm.* (1917), 96 Ohio St. 270, paragraph one of the syllabus.

[3]We note that a gas curtailment plan, arrived at by a *settlement agreement negotiated* between the supplier, Transcontinental Gas Pipe

Having resolved that the subject order is unlawful, we need not consider the remaining questions presented.

*Order reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and P. BROWN, JJ., concur.

CELEBREZZE, J., dissents.

Line Corporation (Transco) and its various customers (public utilities) and providing for monetary penalties for overuse by the customers, has been disapproved by the FPC. *Federal Power Comm.* v. *Transcontinental Gas Pipe Line Corp.* (1976), U. S. , 46 L. Ed. 2d 533, 537, reads:

"* * * The agreement provided for a plan of allocation of natural gas supplies among Transco's customers during periods of shortage, and a monetary compensation scheme under which customers receiving more gas than the system-wide average would compensate customers who received less natural gas than average. The Commission rejected the proposed plan, determining that the compensation scheme would be violative of the Natural Gas Act. The Commission held that the compensation scheme would violate (1) Section 4(a) of the Act, 15 U. S. C. Section 717c(a), which requires a pipeline's jurisdictional rate to be based on the pipeline's cost of service plus a reasonable rate of return; (2) Section 4(b) of the Act, 15 U. S. C. Section 717c(b), which prohibits undue discrimination in rates among similarly situated customers; and (3) Section 7(c) of the Act, 15 U. S. C. Section 717f(c), which requires persons engaging in resales of natural gas in interstate commerce first to obtain a certificate of public convenience and necessity." But, see, *Mississippi Public Service Comm.* v. *Federal Power Comm.* (C. A. 5, 1975), 522 F. 2d 1345; *Louisiana Power & Light Co.* v. *Federal Power Comm.* (C. A. 5, 1976), 526 F. 2d 898.