[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Dayton Power & Light Co.,* Slip Opinion No. 2018-Ohio-4009.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4009

IN RE APPLICATION OF DAYTON POWER AND LIGHT COMPANY TO ESTABLISH A STANDARD SERVICE OFFER IN THE FORM OF AN ELECTRIC SECURITY PLAN, ETC.; OFFICE OF OHIO CONSUMERS' COUNSEL ET AL., APPELLANTS; DAYTON POWER & LIGHT COMPANY, INTERVENING APPELLEE; PUBLIC UTILITIES COMMISSION, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Dayton Power & Light Co.,* Slip Opinion No. 2018-Ohio-4009.]

*Public utilities—Public Utilities Commission's approval of new electric-security plan that replaces the electric-security plan at issue in this appeal renders the appeal moot—Appeal dismissed.*

(No. 2017-0241—Submitted December 6, 2017—Decided October 4, 2018.)

APPEAL from the Public Utilities Commission, Nos. 12-426-EL-SSO, 12-427-EL-ATA, 12-428-EL-AAM, 12-429-EL-WVR, and 12-672-EL-RDR.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, appellants, the Office of Ohio Consumers' Counsel ("OCC"), the Kroger Company ("Kroger"), and the Ohio Manufacturers' Association Energy Group ("OMAEG"), challenge appellee's, the Public Utility Commission's, decision to allow intervening appellee, Dayton Power and Light Company ("DP&L"), to withdraw and terminate its second electric-security plan ("ESP II"). On October 27, 2017, the court sua sponte ordered the parties to file supplemental briefs addressing whether this appeal should be dismissed as moot. 151 Ohio St.3d 1404, 2017-Ohio-8338, 84 N.E.3d 1045. The question was prompted by the commission's approval of DP&L's third electric-security plan ("ESP III"), which replaced ESP II. Pub. Util. Comm. Nos. 16-0395-EL-SSO, 16-396-EL-ATA, and 16-397-EL-AAM, ¶ 1, 131, 141 (Oct. 20, 2017). Because we determine that the approval of ESP III renders this case moot, we dismiss the appeal.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} In 2013, the commission issued an order that modified and approved DP&L's application for ESP II. Pub. Util. Comm. No. 12-426-EL-SSO, 12-427-EL-ATA, 12-428-EL-AAM, 12-429-EL-WVR, and 12-672-EL-RDR, 2013 Ohio PUC LEXIS 193 (Sept. 4, 2013). Although DP&L challenged some of the commission's modifications on rehearing, it ultimately accepted the modified ESP II and began collecting rates under the plan. In the approved ESP II, DP&L included a transition charge known as the Service Stability Rider or SSR.

{¶ 3} On June 20, 2016, this court reversed the commission's decision approving ESP II. *In re Application of Dayton Power & Light Co.*, 147 Ohio St.3d 166, 2016-Ohio-3490, 62 N.E.3d 179 ("*In re DP&L*"). In a one-sentence decision, the court reversed on the authority of *In re Application of Columbus S. Power Co.*, 147 Ohio St.3d 439, 2016-Ohio-1608, 67 N.E.3d 734, which had found a nearly

identical stability charge unlawful under R.C. 4928.38 because it allowed an electric utility to receive transition revenues after the period allowed by statute.

{¶ 4} On July 27, 2016, DP&L moved the commission to allow it to withdraw its application to approve ESP II. R.C. 4928.143(C)(2)(a) allows an electric-distribution utility to withdraw and terminate an electric-security-plan application in the event the commission modifies and approves the application. DP&L argued that the commission should grant the motion to withdraw the ESP II application—which was filed on December 12, 2012—because the commission had modified and approved the application in September 2013. DP&L also asserted that withdrawal of the ESP II application was warranted because this court's decision reversing the commission's approval of ESP II constituted a rejection of the entire electric-security plan.

{¶ 5} On August 26, 2016, the commission granted DP&L's motion to withdraw and terminate ESP II, albeit for different reasons than those advanced by DP&L. First, the commission concluded that this court had rejected only the SSR. As a result, the commission modified ESP II to eliminate the SSR charge. Second, the commission concluded that removing the SSR in response to this court's decision constituted a modification to a proposed electric-security plan, under R.C. 4928.143(C)(1) and thereby triggered DP&L's right to withdraw and terminate its electric-security-plan application under R.C. 4928.143(C)(2)(a). Pub. Util. Comm. No. 12-426-EL-SSO, 12-427-EL-ATA, 12-428-EL-AAM, 12-429-EL-WVR, and 12-672-EL-RDR, ¶ 12-15 (Aug. 26, 2016); Seventh rehearing entry, ¶ 14-15, 23-25 (Dec. 14, 2016).

{¶ 6} In a separate case, the commission determined that DP&L could replace the withdrawn ESP II with the company's first electric-security plan ("ESP I"). The commission ordered that ESP I would remain in effect until the commission approved a new electric-security plan. Pub. Util. Comm. No. 08-1094-

EL-SSO, 08-1095-EL-ATA, 08-1096-EL-AAM, and 08-1097-EL-UNC, ¶ 20 (Aug. 26, 2016).

{¶ 7} On October 20, 2017, the commission issued an order approving ESP III. ESP III replaced ESP I (and in effect ESP II) effective November 1, 2017, and is to remain in place for six years, through October 31, 2023. Pub. Util. Comm. No. 16-0395-EL-SSO, 16-396-EL-ATA, and 16-397-EL-AAM, ¶ 1, 131, 141 (Oct. 20, 2017).

## ANALYSIS

{¶ 8} The ESP II rate plan and its SSR charge are no longer in effect because they have been replaced by ESP III. Because ESP II is no longer in effect, we cannot order effective relief and the appeal is moot.

{¶ 9} This appeal is on all fours with *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 121 Ohio St.3d 362, 2009-Ohio-604, 904 N.E.2d 853. In *Ohio Consumers' Counsel*, we held that the expiration of a utility's rate plan was grounds for dismissing the challenge to the rates charged under that plan. *Id.* at ¶ 19-22. Under review in that case were certain terms and charges of Duke Energy Ohio Inc.'s rate-stabilization plan. OCC argued that certain charges under the rate-stabilization plan were unlawful and unsupported by the record. *Id.* at ¶ 19-20. While the case was pending before us on appeal, however, the rate-stabilization plan expired and was replaced with a new rate plan. *Id.* at ¶ 2. Because the rate structure under appeal was no longer in effect, we determined that we could not remand the case to the commission to implement lower prospective rates under the rate-stabilization plan. We further held that we could not order a refund of excessive rates already collected by Duke Energy, because OCC did not preserve the refund issue for appeal and because any refund order would be contrary to our precedent against retroactive ratemaking. As a result, we dismissed the rate-stabilization-plan portion of the appeal as moot. *Id.* at ¶ 2, 21-22. *See also Cincinnati Gas & Elec. Co. v. Pub. Util. Comm.*, 103 Ohio St.3d 398, 2004-Ohio-5466, 816 N.E.2d 238, ¶ 14-27 (dismissing

appeal as moot due to lack of any available remedy); *Lucas Cty. Commrs. v. Pub. Util. Comm.*, 80 Ohio St.3d 344, 348-349, 686 N.E.2d 501 (1997) (finding that there was no revenue remaining in the discontinued program against which the commission could order a credit or refund of the alleged overpayments and holding that absent such revenue, ordering a credit or a refund would essentially be ordering the utility to set a different future rate, and such orders are prohibited retroactive ratemaking).

{¶ 10} The dissent disagrees with our conclusion that this appeal is moot, because, according to the dissenting opinion, in *In re DP&L*, 147 Ohio St.3d 166, 2016-Ohio-3490, 62 N.E.3d 179, we "reversed the commission's approval of ESP II and granted a remedy * * *, which the commission ignored." Dissenting opinion at ¶ 49. But ESP II is no longer in effect. And contrary to the dissenting opinion's assertion that there was an implicit holding in *In re DP&L*, the court did not specify a remedy in its order reversing the commission's approval of ESP II; we issued a one-sentence decision stating only that the decision approving ESP II was reversed on the authority of *Columbus S. Power*, 147 Ohio St.3d 439, 2016-Ohio-1608, 67 N.E.3d 734.[1] We gave no instructions to the commission for proceedings on remand, let alone an order for the commission to do what the dissenting opinion describes: "to determine the amount of transition revenue improperly collected by

---

1. The remedy that was ordered in *Columbus S. Power* is not binding precedent, because only three justices concurred as to the proposed remedy in that appeal. *See Hedrick v. Motorists Mut. Ins. Co.*, 22 Ohio St.3d 42, 44, 488 N.E.2d 840 (1986) (holding that language in prior plurality opinion was not controlling, because it lacked four votes), *overruled on other grounds*, *Martin v. Midwestern Group Ins. Co.*, 70 Ohio St.3d 478, 639 N.E.2d 438 (1994). Attempting to turn the plurality opinion in *Columbus S. Power* into controlling law, the dissent states, "Justice Pfeifer, joined by Justice O'Neill, expressed the view that the court did not go far enough in ordering this remedy." Dissenting opinion at ¶ 35, fn. 1, citing *In re Columbus S. Power* at ¶ 81 (Pfeifer, J., concurring in part and dissenting in part). But I do not read Justice Pfeifer's opinion in the same way. In *Columbus S. Power*, Justice Pfeifer stated that he would instruct the commission on remand to allow Ohio Power to charge only the market price for capacity service, *id.* at ¶ 83, but nothing in his opinion suggests that he agreed with the remedy sanctioned by the plurality.

DP&L, estimated to be $285 million, and to eliminate the overcompensation by offsetting the balance of DP&L's revenue by the amount of the improperly collected revenue." Dissenting opinion at ¶ 50. Nonetheless, the dissenting opinion insists that the commission "plainly ignored our judgment" and "failed to comport with our reversal mandate" on remand. Dissenting opinion at ¶ 37.

{¶ 11} "The function and jurisdiction of this court in an appeal from an order of the commission is limited." *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 46 Ohio St.2d 105, 108, 346 N.E.2d 778 (1976). Specifically, "[o]ur task is not to set rates; it is only to [ensure] that the rates are not unlawful or unreasonable, and that the rate-making process itself is lawfully carried out." *Id.* Here, the only rates now in effect are in ESP III, which is not before us.

{¶ 12} The opinion concurring in judgment only agrees that dismissal is appropriate but disagrees with the majority's characterization of this appeal as being "on all fours with" *Ohio Consumers' Counsel*. According to the concurrence, the difference between this case and *Ohio Consumers' Counsel* is that, here, our remand order in *In re DP&L* was incomplete because it did not include specific instructions for the commission. Opinion concurring in judgment only at ¶ 18. Contrary to the concurring opinion's suggestion, however, the lack of remand instructions in *In re DP&L* does not distinguish this appeal from *Ohio Consumers' Counsel*, because the remand instructions in *Ohio Consumers' Counsel* played no role in our decision to dismiss that appeal as moot. And regardless of whether the remand orders in either case included instructions, the material fact is that new rates were put into effect. In *Ohio Consumers' Counsel*, we dismissed the appeal because the rate plan being appealed from had expired and had been replaced by a new rate plan. 121 Ohio St.3d 362, 2009-Ohio-604, 904 N.E.2d 853, at ¶ 21-22. That exact situation is present in this appeal.

{¶ 13} Finally, the concurring opinion implicitly places unwarranted blame on the court by referring to our entry in *In re DP&L* as "vague" and "imprecise."

Opinion concurring in judgment only at ¶ 20, 22. (Notably, only one justice dissented from that judgment. *In re DP&L*, 147 Ohio St.3d 166, 2016-Ohio-3490, 62 N.E.3d 179 (Lanzinger, J., dissenting)). In the end, the event that renders this appeal moot is not the court's resolution of *In re DP&L*. The appeal is moot because of events that occurred *since that time*; namely, the approval of ESP III, in a separate case, which caused the rates at issue in *In re DP&L* to expire and new rates to be put in effect. Because ESP III is now in effect and is not being challenged by this appeal, we find this appeal to be moot.

### CONCLUSION

{¶ 14} Because there is no remedy that this court can legally order, this appeal constitutes only a request for an advisory ruling. *Cincinnati Gas & Elec. Co.*, 103 Ohio St.3d 398, 2004-Ohio-5466, 816 N.E.2d 238, ¶ 17 ("In the absence of the possibility of an effective remedy, this appeal constitutes only a request for an advisory ruling from the court"). But "it is well-settled that this court does not indulge itself in advisory opinions." *Armco, Inc. v. Pub. Util. Comm.*, 69 Ohio St.2d 401, 406, 433 N.E.2d 923 (1982). As the controversy is no longer live, we dismiss this appeal as moot.

Appeal dismissed.

FISCHER, and DEWINE, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion.

O'DONNELL, J., dissents, with an opinion joined by FRENCH and LASTER MAYS, JJ.

ANITA LASTER MAYS, J., of the Eighth District Court of Appeals, sitting for O'NEILL, J.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 15} I concur in judgment only. I agree that this case is moot. But it has gotten to this point for its own reasons. Therefore, I disagree with the majority's

assertion in ¶ 9 that this case is "on all fours with" *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 121 Ohio St.3d 362, 2009-Ohio-604, 904 N.E.2d 853 ("*Ohio Consumers' Counsel II*"); the two cases are not "squarely on point with regard to both facts and law," Garner, *Garner's Dictionary of Legal Usage* 633 (3d Ed.2011) (defining "on all fours"). To describe this case as on all fours with *Ohio Consumers' Counsel II* creates the inaccurate impression that this court has dealt with a case nearly identical to this one in the past; it has not. I also write to respond to the concerns raised by the dissenting opinion.

{¶ 16} It is true that this case and *Ohio Consumers' Counsel II* reached the same end, with this court powerless to address the disputed rate plan because the rate plan at issue is no longer in effect. In *Ohio Consumers' Counsel II,* the court dismissed the portion of the appeal related to the rate-stabilization plan because the disputed rates had expired. *Id*. at ¶ 21-22. While dismissal for mootness was appropriate in *Ohio Consumers' Counsel II* and is appropriate in this case, the cases are different.

{¶ 17} *Ohio Consumers' Counsel II* concerned an appeal to this court that followed our remand of the matter to the Public Utilities Commission in *Ohio Consumers' Counsel v. Pub. Util. Comm*., 111 Ohio St.3d 300, 2006-Ohio-5789, 856 N.E.2d 213 ("*Ohio Consumers' Counsel I*"). In *Ohio Consumers' Counsel I*, the commission had approved a stipulation entered into among the relevant parties to establish a standard market-based service offer; we ordered the commission to compel the utility to produce, in discovery, any side agreements that the utility had made with the parties so that the commission could, among other things, "evaluate the seriousness of the bargaining that had led to the stipulation." *Ohio Consumers' Counsel II* at ¶ 1, 3-4. After discovery was complete, the commission issued a second order, which the Ohio Consumers' Counsel appealed to this court. *Ohio Consumers' Counsel II* at ¶ 9-11. We dismissed the portion of the appeal related to the rate-stabilization plan because before we could complete our review, the

challenged rates had expired and new rates were in effect that were based on a rate structure established by new legislation. *Id.* at ¶ 21. Therefore, the court could not remand the case in order to implement lower prospective rates. *Id.*

{¶ 18} In *Ohio Consumers' Counsel I*, this court issued an order clearly describing the action the commission was to take on remand, and there was no dispute that the commission properly followed through in regard to the remand; in *In re Application of Dayton Power & Light Co.*, 147 Ohio St.3d 166, 2016-Ohio-3490, 62 N.E.3d 179 ("*DP&L I*"), in contrast, our remand order did not compel any action but rather was incomplete, because we did not include any specific instructions for the commission to eliminate overcompensation obtained through an unlawful transition charge. Ultimately, the commission, after modifying Dayton Power and Light Company's ("DP&L's") second electric-security plan ("ESP II") to eliminate the service-stability-rider charge, granted intervening appellee DP&L's motion to withdraw ESP II. Pub. Util. Comm. No. 12-426-EL-SSO, 12-427-EL-ATA, 12-428-EL-AAM, 12-429-EL-WVR, and 12-672-EL-RDR, ¶ 12-15 (Aug. 26, 2016); Seventh rehearing entry, ¶ 14-15, 23-25 (Dec. 14, 2016). But DP&L's third electric-security plan is now in place, mooting our consideration of issues surrounding ESP II, so we are left without the ability to determine the important issue of whether the commission's modification of ESP II in reaction to an order of this court properly created an opportunity for the utility to withdraw its utility plan under R.C. 4928.143(C)(2)(a).

{¶ 19} Whereas in *Ohio Consumers' Counsel II*, mootness kept this court from considering only esoteric issues regarding certain aspects of a particular rate plan, in this case we are kept from deciding the broader and far-reaching issue of whether utility companies can avoid any negative effects of our orders by withdrawing their rate plans after we issue our orders. In sum, the way this case got to the point of mootness and the implications of the issues that are left undecided

are so dissimilar from *Ohio Consumers' Counsel II* that I cannot agree with the majority opinion's description of it being "on all fours."

**{¶ 20}** Turning to the concerns raised by the dissenting opinion, I agree that the result in this case is not ideal. However, the less-than-ideal outcome is the upshot of this court's vague entry in *DP&L I*, which merely stated that the commission's decision was "reversed on the authority of *In re Application of Columbus S. Power Co*., 147 Ohio St.3d 439, 2016-Ohio-1608, 67 N.E.3d 734."

**{¶ 21}** Although the dissenting opinion contends that declaring this case moot undermines the authority of this court and may erode public confidence in our decisions, the commission acted after this court's vague entry failed to specifically delineate that the rider at issue in *DP&L I* was unlawful and failed to specify a remedy. The commission could not read into our single-sentence entry the explicit remand instructions applicable in *In re Application of Columbus S. Power Co.* "[T]his court's reversal and remand of an order of the commission does not change or replace the [rate] schedule as a matter of law, but is a mandate to the commission to issue a new order which replaces the reversed order," and therefore the "rate schedule filed with the commission remains in effect until the commission executes this court's mandate by an appropriate order." Cleveland *Elec. Illum. Co. v. Pub. Util. Comm.*, 46 Ohio St.2d 105, 117, 346 N.E.2d 778 (1976). Absent explicit instructions to the commission, our mandate did not require the commission to take any specific course of action.

**{¶ 22}** The dissenting opinion's statement that "the commission knew of our remand in *Columbus S. Power* and in this case, ignored our remand order to determine the amount of transition revenue improperly collected by DP&L, estimated to be $285 million, and to eliminate the overcompensation by offsetting the balance of DP&L's revenue by the amount of the improperly collected revenue," dissenting opinion at ¶ 50, mischaracterizes what the commission did.

Our imprecise entry, which merely reversed the commission's decision on the authority of *Columbus S. Power*, left the commission to act when this court did not.

{¶ 23} Even if the court had issued an explicit order to the commission, the amount that could have been offset against future revenue would have been limited. The dissent asserts that the "transition revenue improperly collected by DP&L, estimated to be $285 million," would have been offset. Dissenting opinion at ¶ 50. However, because the appellants, the Office of Ohio Consumers' Counsel, the Kroger Company, and the Ohio Manufacturers' Association Energy Group, did not post a bond pursuant to R.C. 4903.16, the collection of the rider was not stayed. When the commission approves a rate, it is presumed lawful and will be collected unless a party appeals from the order approving the rate and posts an appropriate bond. *See Columbus v. Pub. Util. Comm.*, 170 Ohio St. 105, 163 N.E.2d 167 (1959), paragraphs one, two, three, and four of the syllabus. Neither the commission nor this court has the authority to order the refund of a charge that is lawfully collected but is later determined to have been unlawful.

{¶ 24} The rider at issue in *DP&L I* authorized DP&L to collect $110 million a year for three years as part of an electric-security plan approved by the commission for "a term beginning January 1, 2014, and terminating December 31, 2016." *In re Application of Dayton Power & Light Co.*, Pub. Util. Comm. Nos. 12-426-EL-SSO, 12-427-EL-ATA, 12-428-EL-AAM, 12-429-EL-WVR, and 12-672-EL-RDR, 2013 Ohio PUC LEXIS 193, *58 (Sept. 4, 2013), as modified by a September 6, 2013 nunc pro tunc entry. During most of that term, the electric-security plan was under review at the commission or at this court. After the rehearing process was exhausted, review was first sought from this court on August 29, 2014. On June 20, 2016, we issued our entry reversing the decision and remanding the case. *DP&L I*, 147 Ohio St.3d 166, 2016-Ohio-3490, 62 N.E.3d 179. The day after the release of our decision, the parties challenging the rider sought an order from the commission suspending the collection of the allegedly

unlawful charge. The commission finally ordered the termination of the charge on August 26, 2016. *In re Application of Dayton Power & Light Co.*, Pub. Util. Comm. Nos. 08-1094-EL-SSO, 08-1095-EL-ATA, 08-1096-EL-AAM, and 08-1097-EL-UNC (Aug. 26, 2016). Therefore, customers paid the charge for 32 of the 36 months that it was authorized and paid approximately $294 million.

**{¶ 25}** The long slog of protracted litigation—not aided by this court's unclear entry in *DP&L I*—has led to today's judgment of mootness. The clock has run out—now the electric-security plan at issue is no longer in force and new rates are in place, which means that this court cannot order any meaningful relief for DP&L's customers without violating the prohibition against ordering refunds. *See Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.*, 166 Ohio St. 254, 257, 141 N.E.2d 465 (1957).

**{¶ 26}** As we recently recognized in *In re Application of Columbus S. Power Co.*, *Keco*'s no-refund rule can be unfair and allow windfalls in cases, like the one before us, in which utilities collect and retain hundreds of millions of dollars from customers for charges that are later determined to have been unlawful. 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 56. The protection provided by the legislature against the collection of these rates that are alleged to be unlawful is a stay secured by a bond in an amount sufficient to protect the utility against damage, *id.*, a bond most litigants cannot afford. Nonetheless, we have consistently held that the prohibition on refunds and the bond requirement are matters of statute and that the determination whether they are wise public policies therefore rests with the General Assembly, not this court. *In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 20. This does not mean that unfairness and windfalls are inevitable. R.C. 4905.32 states:

> No public utility shall refund or remit directly or indirectly, any rate, rental, toll, or charge so specified or, any part thereof, or

extend to any person, firm, or corporation, any rule, regulation, privilege, or facility except such as are specified in such schedule and regularly and uniformly extended to all persons, firms, and corporations under like circumstances for like, or substantially similar, service.

The commission therefore has authority to mitigate the unfairness of the no-refund rule and the barriers imposed by the bond requirement, because a refund is possible if there is refund language in the commission's order establishing the rate charged by the utility, R.C. 4905.32. "[T]he legislature gave the commission the discretionary authority to [order a refund]. All the commission had to do was require a refund clause to be part of the tariff pursuant to R.C. 4905.32." *In re Rev. of Alternative Energy Rider Contained in Tariffs of Ohio Edison Co.*, 153 Ohio St.3d 289, 2018-Ohio-229, 106 N.E.3d 1, ¶ 66 (Kennedy, J., concurring). But here, there was no refund clause in the tariff, so no refund is permissible.

{¶ 27} For the above reasons, I am compelled to concur in judgment only.

_____

**O'DONNELL, J., dissenting.**

{¶ 28} Respectfully, I dissent.

{¶ 29} This matter is not moot. The Public Utilities Commission ignored an earlier order of this court and permitted Dayton Power and Light Company to withdraw its application for its second electric security plan after we reversed the commission's order modifying and approving that plan and remanded the case to the commission "on the authority of *In re Application of Columbus S. Power Co.*, 147 Ohio St.3d 439, 2016-Ohio-1608, 67 N.E.3d 734" ("*Columbus S. Power*"), in which we ordered elimination of overcompensation due to improperly collected revenue. *See In re Application of Dayton Power & Light Co.*, 147 Ohio St.3d 166, 2016-Ohio-3490, 62 N.E.3d 179 ("*In re DP&L*").

**Facts and Procedural History**

{¶ 30} R.C. 4928.141(A) provides that "an electric distribution utility shall provide consumers * * * a standard service offer of all competitive retail electric services necessary to maintain essential electric service to consumers" and permits the utility to provide the offer in one of two ways—a market rate offer pursuant to R.C. 4928.142 or an electric security plan pursuant to R.C. 4928.143.

{¶ 31} DP&L elected to provide its standard service offer through an electric security plan, and on June 24, 2009, the commission approved the application for its first electric security plan or ESP I. *In re Application of Dayton Power & Light Co.*, Pub. Util. Comm. Nos. 08-1094-EL-SSO, 08-1095-EL-ATA, 08-1096-EL-AAM, and 08-1097-EL-UNC, 2009 WL 1917793 (June 24, 2009).

{¶ 32} On September 4, 2013, the commission modified and approved DP&L's application for its second electric security plan or ESP II, effective January 1, 2014. *In re Application of Dayton Power & Light Co.*, Pub. Util. Comm. Nos. 12-426-EL-SSO, 12-427-EL-ATA, 12-428-EL-AAM, 12-429-EL-WVR, and 12-672-EL-RDR, 2013 Ohio PUC LEXIS 193 (Sept. 4, 2013) (the "ESP II Order"). In the ESP II Order, the commission approved a service stability rider or SSR, explaining that DP&L had proposed the SSR "for the purpose of stabilizing and providing certainty regarding retail electric service by maintaining DP&L's financial integrity," which DP&L claimed was threatened by increased customer switching, declining wholesale prices, and declining capacity prices. *Id.* at *36-37. In its order, the commission stated:

> Although generation, transmission, and distribution rates have been
> unbundled, DP&L is not a structurally separated utility; thus, the
> financial losses in the generation, transmission, or distribution
> business of DP&L are financial losses for the entire utility.
> Therefore, if one of the businesses suffers financial losses, it may

> impact the entire utility, adversely affecting its ability to provide stable, reliable, or safe retail electric service. The Commission finds that the SSR will provide stable revenue to DP&L for the purpose of maintaining its financial integrity.

*Id.* at *50.

{¶ 33} In the ESP II Order, the commission further stated that it was rejecting the claim of the Office of the Ohio Consumers' Counsel ("OCC"), the Kroger Company, and others that the SSR constituted an unreasonable and unlawful transition charge "designed to provide DP&L with generation-related revenue that it would otherwise lose as a result of customers shopping to obtain better retail generation supply prices" and "den[ied] customers the benefits of shopping in the competitive retail electric services market," *id.* at *44-45, noting its determination was consistent with its approval of a retail stability rider or RSR in *In re Application of Columbus S. Power Co.*, Pub. Util. Comm. Nos. 11-346-EL-SSO, 11-348-EL-SSO, 11-349-EL-AAM, and 11-350-EL-AAM, 2012 WL 3542177 (Aug. 8, 2012). *Id.* at *51. Subsequently, DP&L began collecting the charges approved by the commission in ESP II.

{¶ 34} While appeals from the ESP II Order were pending in this court, we held in *Columbus S. Power*, 147 Ohio St.3d 439, 2016-Ohio-1608, 67 N.E.3d 743, that the commission erred when it found the RSR did not recover transition revenue or its equivalent. *Id.* at ¶ 38. In that case, we explained that transition costs are generally generation costs a utility incurred before retail competition began "that are no longer recoverable from customers who have switched to another generation provider." *Id.* at ¶ 15. The RSR was intended to "guarantee recovery of lost revenue resulting from certain discounted capacity prices * * * and from expected increases in customer shopping during the ESP," *id.* at ¶ 23, and it was "designed to generate enough revenue for the company to achieve a certain rate of return on

its generation assets," *id.* at ¶ 23. Thus, we concluded the RSR recovered the equivalent of transition revenue. *Id.* at ¶ 25.

{¶ 35} In *Columbus S. Power* we further explained that the commission had previously authorized the utility company to recover its actual capacity costs, but because it also allowed the utility to recover "$508 million in additional revenue through the RSR during the ESP period, the amount of which appears to be tied in large part to [the utility's] recovery of [competitive retail electric service capacity revenues]," the utility was "being overcompensated for providing capacity service through the nondeferral part of the RSR." *Id.* at ¶ 34. We noted the utility was "currently collecting * * * deferred capacity costs with carrying charges through the RSR," and we ordered the commission "to adjust the balance of [the utility's] deferred capacity costs to eliminate the overcompensation of capacity revenue recovered through the nondeferral part of the RSR during the ESP," and we remanded the matter to the commission to determine how much of the revenue recovered through the nondeferral part of the RSR was allocable to competitive retail electric service capacity revenues and to "offset the balance of deferred capacity costs by the amount determined." *Id.* at ¶ 39-40.[2]

{¶ 36} *Columbus S. Power* is significant in the instant case because on June 20, 2016, we reversed the commission's order approving ESP II "on the authority of * * * Columbus S. Power." *See In re DP&L.*

{¶ 37} On remand, even though it had collected revenue pursuant to the ESP II Order which we reversed, DP&L moved to withdraw its application for ESP II pursuant to R.C. 4928.143(C)(2)(a). The commission found that ESP II "should be modified to remove the SSR based upon the opinion" of this court in *In re DP&L*; it then modified the ESP II Order to eliminate the SSR, and it explained that in

---

2. In his opinion concurring in part and dissenting in part, Justice Pfeifer, joined by Justice O'Neill, expressed the view that the court did not go far enough in ordering this remedy. *Columbus S. Power* at ¶ 81 (Pfeifer, J., concurring in part and dissenting in part).

doing so, it had effectively modified the application for ESP II and therefore, pursuant to R.C. 4928.143(C)(2)(a), had "no choice but to grant DP&L's motion" to withdraw, terminate ESP II, and dismiss the case. Pub. Util. Comm. Nos. 12-426-EL-SSO, 12-427-EL-ATA, 12-428-EL-AAM, 12-429-EL-WVR, and 12-672-EL-RDR (Aug. 26, 2016), ¶ 12-15. In so doing, the commission plainly ignored our judgment reversing its decision "on the authority of" *Columbus S. Power* and did not adjust the balance of DP&L's revenue to eliminate the overcompensation of revenue recovered through the SSR or offset the balance of the overpayment through future rate authorizations. This was error and failed to comport with our reversal mandate.

{¶ 38} On the same day that the commission granted DP&L's motion to withdraw the ESP II application, it also issued a separate order granting DP&L's motion to implement the provisions, terms, and conditions of ESP I, purportedly in accordance with R.C. 4928.143(C)(2)(b), until it authorized a subsequent standard service offer. Pub. Util. Comm. No. 08-1094-EL-SSO, 08-1095-EL-ATA, 08-1096-EL-AAM, and 08-1097-EL-UNC (Aug. 26, 2016). The order implementing ESP I is the subject of a separate appeal now pending before us in Supreme Court case No. 2017-0204.

{¶ 39} Thereafter, OCC, Kroger, the Ohio Manufacturers' Association Energy Group ("OMAEG"), and others challenged the order granting the motion to withdraw the application for ESP II by filing applications for rehearing. In an entry denying those applications, the commission rejected a claim that *In re DP&L* implicitly directed the commission to "initiate a proceeding to account for the effects of the SSR and adjust rates accordingly." Pub. Util. Comm. No. 12-426-EL-SSO, 12-427-EL-ATA, 12-428-EL-AAM, 12-429-EL-WVR, and 12-672-EL-RDR, 2016 Ohio PUC LEXIS 1139 (Dec. 14, 2016), ¶ 31 and 33. This too was error because when the commission removed the SSR based on our opinion, it failed to account for the overcompensation the utility had received and thereby

manipulated implementation of ESP II to purport to eliminate the necessity to adjust prospective rates. But our intent in reversing was to have the commission offset the overcompensation. It failed to do so.

**{¶ 40}** The commission determined this claim was moot because DP&L had "withdr[awn] and terminated the SSR along with the rest of ESP II," so, unlike in *Columbus S. Power*, "[t]here are no prospective rates to adjust * * *." *Id.* at ¶ 34. The commission also determined such an adjustment would violate precedent from this court prohibiting retroactive ratemaking, citing *Keco Industries Inc. v. Cincinnati & Suburban Bell Tel. Co.*, 166 Ohio St. 254, 141 N.E.2d 465 (1957). *Id.* at ¶ 33.

**{¶ 41}** Those commission determinations, however, ignore our order reversing "on the authority of" *Columbus S. Power* and fail to address the overcompensation issue. The orders granting the motion to withdraw and denying the applications for rehearing are the subject of this appeal.

**{¶ 42}** On October 20, 2017, the commission approved DP&L's third electric security plan or ESP III, effective November 1, 2017. Pub. Util. Comm. No. 16-0395-EL-SSO, 16-396-EL-ATA, and 16-397-EL-AAM (Oct. 20, 2017).

### Law and Analysis

**{¶ 43}** "R.C. 4903.13 provides that a [Public Utilities Commission] order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *In re Complaints of Lycourt-Donovan v. Columbia Gas of Ohio, Inc.*, 152 Ohio St.3d 73, 2017-Ohio-7566, 93 N.E.3d 902, ¶ 23. "[T]his court has 'complete and independent power of review as to all questions of law' in appeals from the [commission]." *Id.* at ¶ 24, quoting *Ohio Edison Co. v. Pub. Util. Comm.*, 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997).

**{¶ 44}** R.C. 4928.143(C)(1) governs the commission's decision to approve, modify and approve, or reject an application for a proposed ESP and states:

The commission shall issue an order under this division for an initial application under this section not later than one hundred fifty days after the application's filing date and, for any subsequent application * * * , not later than two hundred seventy-five days after the application's filing date. * * * [T]he commission by order shall approve or modify and approve an application * * * if it finds that the electric security plan so approved * * * is more favorable in the aggregate as compared to the expected results [of a market rate offer]. * * * Otherwise, the commission by order shall disapprove the application.

{¶ 45} R.C. 4928.143(C)(2)(a) provides:

If the commission modifies and approves an application [for approval of an electric security plan] *under division (C)(1) of this section*, the electric distribution utility may withdraw the application, thereby terminating it, and may file a new standard service offer * * * .

(Emphasis added.)

{¶ 46} Here, the commission concluded that its decision to remove the SSR from ESP II following our reversal in *In re DP&L* on the authority of *Columbus S. Power* effectively modified and approved the application for ESP II and therefore triggered DP&L's statutory right to withdraw that application pursuant to R.C. 4928.143(C)(2)(a). The commission is wrong.

{¶ 47} When the commission removed the SSR from ESP II, it was not exercising *its* discretion to modify and approve an ESP application pursuant to R.C.

4928.143(C)(1); rather, it was acting pursuant to a mandate *from this court*, and the commission stated that it modified the ESP II order to eliminate the SSR "based upon the opinion" of this court. Notably, R.C. 4928.143(C)(2)(a) does not permit a utility to withdraw an application for an ESP that has already taken effect in response to an adverse ruling by this court, and that is the reason for my departure from the majority, which declares the issue moot. It is not.

{¶ 48} Here, the commission removed the SSR from ESP II on remand but ignored our mandate to adjust the balance of DP&L's revenue to eliminate the overcompensation through future rate authorizations and exceeded its statutory authority when it permitted DP&L to withdraw its ESP II application. Thus, its order granting that motion to withdraw is unlawful.

{¶ 49} I reject the majority's position that the approval of ESP III renders this case moot "[b]ecause there is no remedy that this court can legally order." Majority opinion at ¶ 14. And I reject its position that in *In re DP&L*, this court specified no remedy for the improper collection of revenue, which has been estimated by OCC, Kroger, and OMAEG to be $285 million. This court reversed the commission's approval of ESP II and granted a remedy in *In re DP&L*, which the commission ignored. By reversing the decision of the commission modifying and approving the application for ESP II and explaining that our reversal was "on the authority of * * * *Columbus S. Power*," *In re DP&L*, 147 Ohio St.3d 166, 2016-Ohio-3490, 62 N.E.3d 179, we implicitly held that the SSR, like the RSR that was at issue in *Columbus S. Power*, provided DP&L with generation related revenue that it would otherwise lose as a result of customer shopping and thus improperly allowed DP&L to collect transition revenue or its equivalent. *See Columbus S. Power*, 147 Ohio St.3d 439, 2016-Ohio-1608, 67 N.E.3d 734, at ¶ 15, 25.

{¶ 50} In *Columbus S. Power*, we noted the utility was compensated for providing capacity service through the nondeferral part of the RSR and was collecting deferred capacity costs with carrying charges through the RSR, and we

ordered the commission to adjust the balance of the deferred capacity costs to eliminate the overcompensation and remanded the cause for the commission to determine how much of that revenue was allocable to competitive retail capacity revenues and to offset the balance by the amount determined. *Id.* at ¶ 39-40. Here, the commission knew of our remand in *Columbus S. Power* and in this case, ignored our remand order to determine the amount of transition revenue improperly collected by DP&L, estimated to be $285 million, and to eliminate the overcompensation by offsetting the balance of DP&L's revenue by the amount of the improperly collected revenue.

{¶ 51} The decision of the commission to modify ESP II by deleting the SSR, pursuant to our reversal on the authority of *Columbus S. Power*, only partially satisfied our order, because the commission did not calculate the amount of DP&L's overcompensation through the SSR and did not either adjust the balance of DP&L's revenue to eliminate the overcompensation or offset the balance of the overpayment through future rate authorizations, as in *Columbus S. Power*. An administrative agency has no power or authority to deviate from a mandate issued by a reviewing court. *In re Wella A.G.*, 858 F.2d 725, 728 (Fed.Cir.1988). Hence, the commission's decision to modify ESP II and permit the utility to withdraw it fails to comply with this court's order on remand and is neither lawful nor reasonable.

{¶ 52} And here, the majority begins to take steps on a path that has the potential to make Ohio Supreme Court review of decisions like this one rendered by the commission completely meaningless. By issuing its dismissal based on mootness, the majority permits the utility to keep the estimated $285 million it improperly collected and establishes a road map for future similar occurrences.

{¶ 53} We already witness in this matter that our court is called upon to conduct a partial review of a multiyear ESP that began in 2009, with ESP II being approved effective January 2014. Despite our remand due to an overcompensated

utility and our reversal on the authority of *Columbus S. Power*, in which we ordered an adjustment, the commission here permitted the utility to simply withdraw ESP II and substitute ESP I with no adjustment to account for the alleged $285 million collected in overcompensation. And a majority of this court determines that the matter is moot because ESP II no longer exists.

{¶ 54} The court here sets a poor precedent. It not only fails to enforce one of its lawful orders, but it also telegraphs to other utilities that if this court reverses a matter in connection with an application approved by the commission involving collection of unlawful charges, on remand, they can simply follow the procedure here, apply to withdraw the application, and thereby render review by this court wholly meaningless. This is exactly the import of today's decision when it dismisses the matter as moot "[b]ecause there is no remedy that this court can legally order." Majority opinion at ¶ 14.

{¶ 55} Courts have inherent authority to enforce their judgments. And a matter that potentially involves a $285 million overcompensation that this court had previously ordered to be accounted for and/or offset through future rate authorizations can be remedied by an order of this court directing the commission to accomplish that objective. This is a significant case. The majority's decision to cede its lawful constitutional authority to review the commission's orders reduces the jurisdiction of this court and establishes precedent that may well erode public confidence in our decisions.

### Conclusion

{¶ 56} The order of the commission granting DP&L's motion to withdraw ignores a mandate from this court and violates R.C. 4928.143(C)(2)(a) because the statute does not permit a utility to withdraw an application for an ESP that has been reversed and is subject to a mandate from this court. Accordingly, I would conclude that the order of the commission is unlawful and unreasonable. Thus, I would reverse it and once again remand the matter to the commission and order the

22

commission to calculate the amount DP&L was overcompensated through the SSR and either adjust the balance of DP&L's revenue to eliminate the overcompensation or offset the balance of the overpayment through future rate authorizations to comply with our mandate in *In re DP&L* reversing the ESP II Order on the authority of *Columbus S. Power*.

FRENCH and LASTER MAYS, JJ., concur in the foregoing opinion.

_____

Bruce Weston, Ohio Consumers' Counsel, Maureen R. Willis, Senior Regulatory Counsel, and Terry Etter, Assistant Consumers' Counsel, for appellant Office of the Ohio Consumers' Counsel.

Carpenter, Lipps & Leland, L.L.P., and Angela Paul Whitfield, for appellant Kroger Company.

Robert Brundrett, for appellant Ohio Manufacturers' Association Energy Group.

Michael DeWine, Attorney General, and William L. Wright, Thomas W. McNamee, and Werner L. Margard III, Assistant Attorneys General, for appellee.

Faruki, Ireland, Cox, Rhinehart & Dusing, P.L.L., D. Jeffrey Ireland, Jeffrey S. Sharkey, and Christopher C. Hollon, for intervening appellee.

_____